(No. 21658.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK SCHANDA, Plaintiff in Error.

*Opinion filed February 23, 1933—Rehearing denied April 11, 1933.*

JOSEPH LUSTFIELD, (ODE L. RANKIN, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, HJALMAR REHN, State's Attorney, J. J. NEIGER, and JAMES E. BURKE, for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Frank Schanda, (herein called defendant,) was indicted, tried and convicted in the circuit court of Will county for the murder of William Schmook. After his motions for new trial and in arrest of judgment had been overruled he was sentenced to imprisonment in the penitentiary for a term of ninety-nine years, the penalty fixed by the verdict of the jury. He has sued out a writ of error from this court for a review of the record.

Elizabeth McMullen, the only witness to the homicide, testified for the People substantially as follows: She was eighteen years old and lived in Chicago. On January 10, 1932, her father was, and for about a year prior thereto had been, the owner of a lunch stand and gasoline station located at the southeast corner of the intersection of Lincoln highway and Kean avenue, at Frankfort, in Will county. Lincoln highway runs east and west and Kean avenue north and south. The lunch stand faced west and

sat back some distance from the highway. There were two doors in the west side of the building, called the north door and the south door. On the inside the lunch room was about eighteen by thirty feet in size. There was a counter which made a right angle near the southeast corner of the lunch room and paralleled the south and east sides thereof and was a few feet from its east and south walls. There were no stools or chairs at this counter but there were four tables in the room at which customers were served. Between the north and south doors there was a window, and one of the tables was located against the west wall of the room, below this window. There was a heating stove in the middle of the room, a telephone booth in the northeast corner of the room and a davenport along the east wall of the room. On the east side, at the south of the building, there was a separate room connected with the lunch room by a doorway, across which was hung a curtain. In this room was a refrigerator, a table and a cot. The lunch room was lighted by three electric lights that hung down about three feet from the ceiling. These lights were in a row across the room from north to south. The light on the south side of the room was over the counter running east and west and was not shaded in any way. The other two lights were shaded with orange tissue paper. On said date witness was conducting the business of the lunch room, and William Schmook, who was about sixty years of age, was looking after the gasoline and oil business. About ten o'clock P. M. of that day witness was sitting on the davenport and Schmook was sitting on a chair at the table against the west wall of the lunch room. No other person was in the room. The defendant and another man came into the lunch room through the north door. Witness got up and stood behind the counter. These men walked near the counter underneath the unshaded light. They were not more than two feet from witness. They had nothing over their faces and she could see them plainly.

They asked if they could get coffee. She replied that they could and asked if that was all they wanted, to which the defendant replied that it was. She turned on the gas under the coffee urn, set two cups and saucers on the counter and went to the refrigerator to get cream. She returned to the lunch room proper with two small containers of cream, walked to the table in the center of the room and set these containers on the table. The man who came into the lunch room with the defendant stuck the muzzle of a gun in her side and said, "Get in the back room; it is a hold-up." She then saw Schmook struggling with the defendant, who had a pistol in his hand. Schmook had hold of the defendant's wrist. The man who had the pistol in her side said to the defendant, "Hit him over the head." Witness jerked away from the man beside her and ran out of the north door. She screamed and started to run across the highway. When she got on the highway she heard a shot. She glanced back and saw an automobile near the lunch stand with two men in the back seat. She ran to a house across the highway and pounded on the door but was unable to arouse anyone. She started back to the lunch stand and saw the automobile proceed east on the highway. When she got into the lunch stand she saw blood on the floor. Schmook was "half on the davenport and half on the floor." There was blood on his head and he seemed to be in agony. She called for the police and a doctor. She did not see Schmook after he was taken from the lunch room. She had never seen the defendant before that evening but was sure he was one of the men who came into the lunch room at that time. About $400 in currency, which was receipts from the sale of gas and oil and which had been kept in a box in the side room, was found to be missing after Schmook had been taken to a hospital.

Joseph O'Neil, a sergeant of the State police, testified for the People that he went to the lunch stand on the night of January 10, 1932, and found William Schmook lying on

the floor. He put Schmook in a car and took him to a hospital. Schmook was alive when put in the car but was dead when they got to the hospital.

Dr. Walter V. Hedges, a witness for the People, testified that he was called to the lunch counter and oil station at about ten o'clock on the evening of January 10, 1932. He there found the deceased, William Schmook, lying on the floor. He had been shot in the abdomen and through the web between the thumb and first finger of one hand. He had also been "dealt a blow on the head." The hand was blackened. There were no powder marks on the wound in the abdomen. That wound was in the upper gastric region, below the ribs. Witness could not positively say which direction the bullet traveled, but it appeared to be on a downward angle. In witness' opinion the gunshot wound in the abdomen was a fatal wound. Deceased was taken away from the lunch stand by officer O'Neil. He was alive and conscious at the time he was taken away. Witness did not see him after that time.

About five o'clock in the afternoon of March 4, 1932, the defendant and another man came into the McMullen lunch room, which was then in charge of witness Elizabeth McMullen. The defendant and his companion each ate a sandwich there. They then bought some cigarettes, left the lunch room, got into a new Pontiac automobile which they had parked outside the lunch room and drove east on the highway. As they were leaving the lunch room, officer Edward Gast came into it and Miss McMullen informed him that one of those men was the man who killed Schmook. Gast did not follow them but sat down and had some lunch. Before he had finished eating, the defendant and his companion drove up to an automobile filling station connected with a garage across the highway from the lunch stand. Gast went across the highway to this garage. He summoned Miss McMullen and pointing to the defendant asked her if he was the man. She replied that he was.

Gast then arrested the defendant, searched him and took from him a pistol. He also arrested the defendant's companion. Officer Knater then came to the filling station and he and Gast took the defendant and his companion to the Will county jail, in Joliet, where the defendant was questioned until about three o'clock in the morning. Gast testified that when he arrested the defendant he informed him that he was arrested for murder. Both Gast and Knater testified that the defendant at the filling station offered them $500 each to allow him to escape. On the way to Joliet he offered them $750 each, and later $1000 each, and finally all the money he had and a diamond stud that he wore in his necktie, if they would allow him to make his escape. When he was put into the Will county jail he had on his person $2204.50.

The only evidence for the defendant was his testimony, which is in substance as follows: On the evening of January 10, 1932, he lived in Maywood, Illinois, with his wife. On that evening Mr. and Mrs. Frank Wilson had dinner with him and his wife at his home. They left his home about 9:30 o'clock that evening and thereafter he was at his home with his wife and in the company of no one else. He was not in the McMullen lunch room on the evening of January 10, 1932. He never shot Schmook and did not learn of his having been killed until after witness. was arrested. He never at any time shot or killed anyone. On the morning of January 11, 1932, he went to Wilson's home, and Wilson's landlady told him that Wilson had been arrested by the Chicago police and that the police were looking for witness. He then went back and got his wife. They stayed in Chicago for a day and then went to Nebraska and then to New Orleans. After that time, and before his arrest, he was in Chicago several times. He was engaged in hauling liquor from New Orleans to Chicago. On the Sunday before he was arrested he took his wife, who was pregnant, to a house about two

miles east of the McMullen lunch room and left her there. After he and his companion had sandwiches at the Mc-Mullen lunch room on March 4, 1932, (the day he was arrested,) he drove east to this house and visited his wife. He then drove back to the filling station and was getting gasoline in his tank and air in his tires preparatory to making a trip to New Orleans when he was arrested. He also stated that at the time Gast arrested him Miss McMullen told Gast that she was not sure he was the man. He stated that he told the officers when he was arrested he was a liquor runner and that he had a large sum of money and carried a pistol to protect himself and his money. He admitted having offered money to the officers who arrested him to induce them to discharge him without taking him to jail, and stated that he did not learn until after he had been questioned until two o'clock in the morning, following his arrest that he was held for the murder of Schmook.

In rebuttal the People introduced in evidence, over the objection of the defendant, a certified copy of the record of the conviction on October 20, 1925, of Frank Schanda in the criminal court of Cook county of larceny on his plea of guilty.

It is contended by the defendant that the judgment should be reversed because the evidence is insufficient to sustain the verdict. In this connection it is contended that the *corpus delicti* is not established. In murder the *corpus delicti* consists of two elements: the fact of death and the criminal agency of another person as the cause of death. (*Campbell* v. *People,* 159 Ill. 9.) Where it is the best evidence obtainable the *corpus delicti* may be shown by circumstantial evidence. (*People* v. *Ahrling,* 279 Ill. 70; *People* v. *Hotz,* 261 id. 239; *Campbell* v. *People, supra.*) In this case the fact of death is proven by direct and positive evidence. The evidence also shows that on the evening of January 10, 1932, the deceased, William Schmook, was alive and able to be on duty as an attendant at a gaso-

line filling station; that he was seen struggling with a man—one of two persons who had entered the lunch room to commit robbery; that this man had a pistol in his hand and the deceased had hold of the man's writ; that a very short time thereafter there was heard the report of a shot in the lunch room and in a few moments the deceased was found on the floor of the lunch room; that he had been struck over the head and wounded by a bullet which pierced the web between his thumb and index finger and entered his abdomen; that in the opinion of the physician who was called to attend him the wound in the abdomen was a fatal wound, and that he died on the way to a hospital. These facts show beyond all reasonable doubt that the deceased died of the wound in his abdomen and that that wound was inflicted by the criminal agency of another person. There is no failure of proof of the *corpus delicii*.

That the deceased came to his death by a gunshot wound inflicted in his abdomen by one of the two men who entered the lunch room on the evening of January 10, 1932, for the purpose of committing robbery, is established beyond all reasonable doubt. It matters not which one of those men actually fired the fatal shot. They are both guilty of murder. (*People* v. *Rudecki,* 309 Ill. 125.) The question of the guilt of the defendant depends solely upon his identification as one of those men. Miss McMullen in her testimony positively identifies him as one of the men and as the one with whom the deceased was struggling shortly before the fatal shot was fired. It is the contention of the defendant that her testimony is so unsatisfactory that when considered with the testimony of the defendant it leaves a reasonable doubt of his identification.

Miss McMullen was cross-examined at length by the defendant's attorney. We have read and considered her testimony with care and are convinced that she is a young women of more than average intelligence and powers of observation and nothing is shown that in any way casts

discredit upon her or her testimony. In her cross-examination on June 2, 1932, it was developed that during the trial of the case she was staying at the Woodruff Hotel, in Joliet. She was asked if witness Knater had "been hanging around" the hotel the day before, and she answered, "No." The following questions were then asked and the following answers given by her:

Q. "You saw me watching you, didn't you?

A. "I saw you when I was talking to Mr. Rehn.

Q. "Was it he that you were talking to?

A. "Yes.

Q. "I thought it was one of the sheriffs. He didn't see me.

A. "His back was turned.

Q. "You are positive that you talked to Mr. Rehn?

A. "Yes."

At the close of the case it was stipulated "that the man with whom Betty McMullen was talking Wednesday evening, June 1, 1932, at 5:00 P. M., in front of the Woodruff Hotel, was Mr. George Milward, deputy sheriff, who was suddenly taken ill and unable to appear as a witness and would so testify if called as a witness." In his argument the defendant stresses this testimony and stipulation as showing that the powers of observation and identification of Miss McMullen are so defective as to make her testimony unreliable. There is no contradiction between the testimony and the facts stated in the stipulation. Miss McMullen did not deny having talked to the deputy sheriff in front of the hotel at the time stated in the stipulation. In her testimony no time was fixed as to when she talked with Rehn in front of the hotel, and there is no showing that she did not talk to him there on June 1, 1932, at a time when the defendant's attorney was watching her. As we have stated, we find nothing in the record to discredit Miss McMullen's testimony. Her identification of the defendant was positive. The defendant is a self-confessed

law violator, and leaving out of account his interest in the result of the trial, his testimony, under the facts shown by the record, is entitled to little weight. This court has held that the testimony of one witness, even though denied by the accused, may be sufficient to sustain a conviction. (*People* v. *Zurek,* 277 Ill. 621; *People* v. *Schoop,* 288 id. 44.) It is our opinion that the jury was fully warranted in concluding that the evidence established the guilt of the defendant beyond all reasonable doubt and that we would not be warranted in setting aside the verdict because of an insufficiency of evidence to support it.

It is contended that the judgment should be reversed because of misconduct of the State's attorney. on the trial. One of the supposed items of misconduct was the action of the State's attorney in displaying a pistol during the trial. When objection was made by the defendant the State's attorney stated that he proposed to show that it was the pistol taken from the defendant at the time of his arrest. The court, however, sustained the objection and the pistol was not offered in evidence. Furthermore, it was admitted by the defendant that he was armed with a pistol when arrested, and therefore there can be no possible ground for contending that he was prejudiced by the action of the State's attorney.

Another alleged ground of misconduct of the State's attorney is the asking of improper questions on the cross-examination of the defendant. On direct examination the defendant testified that on the morning of the day after the deceased was killed he went to the home of Frank Wilson and was informed that Wilson had been arrested by the Chicago police and that the police were looking for witness, and that he immediately got his wife and left his home. On cross-examination he was asked why he left his home on the morning of January 11. After objection was overruled he replied that he left because he had been informed of Wilson's arrest and that the Chicago police

were looking for him. He was asked if he was afraid of the Chicago police, and after the objection to the question was overruled he replied that he was. He was then asked why he was afraid of the Chicago police. An objection to the question was made and there was some conversation between the court and the attorneys. The defendant was not required to and did not answer this question. Nothing was brought out by this cross-examination that had not been brought out by the defendant's testimony on direct examination, and it is impossible to see how he was prejudiced by it.

It is also contended that remarks made by the State's attorney in his argument to the jury were improper and prejudicial. The abstract shows three objections made by the defendant to the argument of the State's attorney. In two instances the objections were sustained and the jury cautioned to disregard the argument. In the third case the objection was overruled. It is not contended that there was any error in this latter ruling. The remarks to which objections were sustained were not of such a nature that any impression against the defendant made thereby was not removed by the ruling and action of the court.

Complaint is made by the defendant of the action of the court in overruling his objections to leading questions asked of Miss McMullen by the State's attorney in her direct examination and in sustaining objections of the State's attorney to questions asked of the defendant on direct examination. The leading questions to which objections of the defendant were overruled related in the main to the location of the lunch room, its contents and a description of the scene of the crime. In none of the instances cited by the defendant did the questions relate to matters denied by him or as to which there is any substantial dispute. As was stated by this court in *People* v. *Preston*, 341 Ill. 407, it would have been an undue waste of the valuable time of the court, counsel and jury to have sustained the objections

to these questions and would have served no good purpose. Objections of the State's attorney were sustained to questions asked of the defendant by his attorney on direct examination relating to what questions were asked him and what his replies thereto were at the county jail on the night of his arrest. There is no offer of proof or anything else in the record to indicate that the testimony sought to be adduced by these questions asked of the defendant on his direct examination in anywise related or was pertinent to the question of his guilt or any other question before the court, and it is impossible to see how there was any error in sustaining the objections.

It is contended that the court erred in admitting the record of the conviction for larceny in the criminal court of Cook county of Frank Schanda in 1925. Under the provisions of section 6 of division 8 of the Criminal Code it is permissible and proper to prove by the record that any witness in a criminal case has been theretofore convicted of an infamous crime, for the purpose of affecting his credibility. (*Bartholomew* v. *People,* 104 Ill. 601; *People* v. *Fisher,* 340 id. 216.) The only reason assigned by the defendant as to why the record of conviction was erroneously received in evidence is that there was no proof that the Frank Schanda named in that record was the defendant Frank Schanda in this case. In *Clifford* v. *Pioneer Fire-Proofing Co.* 232 Ill. 150, this court held that in a civil case the record of the conviction of a witness for an infamous crime was admissible to affect his credibility without evidence of the identity of the person convicted as the witness other than the identity of names, as such fact will be presumed if not denied. The same rule has been held to apply in a criminal case. (*People* v. *Lawson,* 331 Ill. 380.) The conviction for an infamous crime in either case is allowed to be shown for no other purpose than to affect the credibility of the witness. The record of such conviction of a defendant who voluntarily becomes a witness in

a criminal case is not introduced, and cannot be considered, for the purpose of proving his guilt or innocence of the crime for which he is being tried but only for the purpose of discrediting him as a witness. Proof of such conviction need not, therefore, be made beyond a reasonable doubt before such evidence may be considered on the question of credibility. In the record of conviction of larceny in the criminal court of Cook county it appears that the conviction was had on October 20, 1925, and that the court found the age of the defendant to be about twenty-five years. By its verdict in this case the jury found the age of the defendant to be twenty-nine years. The evidence on which this finding of age is made does not appear in the abstract of the record furnished by the defendant in this case, and there is no showing that there was any evidence of the age of the defendant before the court or jury when the record of conviction of larceny was introduced in evidence. It is true that if the Frank Schanda convicted in the criminal court was twenty-five years old at the time of such conviction he would have been at least thirty-one years old when this case was tried, but the finding of the age of a defendant on his being found guilty is not required to be made with absolute accuracy. The object of the statute requiring such finding is to enable the court to exercise its discretion, if any, as to the place of imprisonment. (*People* v. *Dear,* 286 Ill. 142; *People* v. *Simmons,* 299 id. 201.) It does not appear that there was any evidence in this case to indicate in any way that the Frank Schanda convicted in the criminal court of Cook county was not the Frank Schanda who is the defendant in this case. The names are identical and the name is not a common one. We hold that there was no error in admitting in evidence the record of conviction in the criminal court of Cook county for the purpose of affecting defendant's credibility as a witness.

It is contended by the defendant that the court erred in permitting jurors to separate after their selection by

both the People and the defendant and in not keeping together the entire panel of twelve jurors as they were called into the jury box. The showing of the record on this point is, that when the first four jurors were selected they were sworn and placed in charge of a sworn officer; that when the second four jurors were accepted by both sides they were sworn and placed in charge of a sworn officer, but that jurors tentatively accepted from day to day were permitted to go at large until the last man on that panel of four was accepted by both sides and the panel of four was sworn. It will be seen that jurors finally accepted and sworn to try the case were not permitted to separate but were kept together in charge of a sworn officer. It is unquestionably the law, as established by many decisions of this court, that in a capital case the defendant has the right to have the jury kept together in charge of a sworn officer for the purpose of guarding against improper influence that might operate to the prejudice of the accused. (*People* v. *Casino,* 295 Ill. 204.) It is also the law that jurors are required to be accepted in panels of four, and until both sides have accepted a panel of four either side may peremptorily challenge a juror tendered to the other side. (*People* v. *Curran,* 286 Ill. 302.) It appears from the record in this case that the jurors, when they had been selected and sworn to try the case, were kept together in charge of a sworn officer, as required by law. Jurors tentatively selected but not in a panel of four finally selected by both sides and who had not been sworn to try the cause were not required to be kept together by any statute of this State or by any decision of this court. As to such jurors the defendant unquestionably had the right of peremptory challenge, and if he suspected that they had been subjected to any prejudicial influence since he tendered them, he no doubt would have been given the privilege to examine them further as to their whereabouts and conduct, in order to show grounds of challenge for cause or to enable him

to exercise his right of peremptory challenge intelligently. There was no error in allowing prospective jurors not finally accepted and sworn to try the cause to separate.

Complaint is also made by the defendant that the court erred in giving instructions for the People and in refusing two instructions offered by the defendant. It is not contended that there was error in stating the law in the instructions given for the People, but the contention is that the law stated in them was inapplicable to the facts of this case. These instructions related to the law of principal and accessory. We are of the opinion that there was no possible injustice done to the defendant by the giving of these instructions, under the facts as disclosed by the evidence in this case. Of the two instructions offered by the defendant and refused by the court, one was so worded that it would likely have been very misleading to the jury, and the substance of the other was contained in other instructions given to the jury.

The defendant questions the action of the trial court in refusing him a stay of *mittimus* pending his application for a *supersedeas* from this court. The act of June 25, 1917, (Law of 1917, p. 338,) which provides that a defendant convicted of a criminal offense is entitled to a reasonable time in which to make application for a *supersedeas* and is entitled to bail in the meantime, applies only to offenses which under the law are bailable and has no application to capital cases. *People* v. *St. Lucia,* 315 Ill. 258.

The record discloses that the defendant has had a fair and impartial trial in which no prejudicial or reversible error was committed and that he was proven guilty beyond a reasonable doubt.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*