(No. 31047.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER URBAN, Plaintiff in Error.

*Opinion filed May 19, 1949.*

WILLIAM L. CARLIN, and LOUIS A. ROSENTHAL, both of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T.

GALLAGHER, PETER G. KUH, W. S. MIROSLAWSKI, and ALEXANDER J. NAPOLI, all of Chicago, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Plaintiff in error, Walter Urban, entered a plea of not guilty in the criminal court of Cook County, to an indictment which charged him jointly with one Joseph Ignatowski, of assault with intent to commit robbery of George Johnson. A jury found plaintiff in error guilty and the court entered judgment sentencing him to the penitentiary for a term of not less than one nor more than fourteen years. To review that judgment he has brought the record here by writ of error.

Plaintiff in error seeks a reversal in this court on the ground that the evidence is insufficient to support the verdict and judgment because (a) the evidence is not convincing beyond a reasonable doubt, the proof being compatible with the theory of innocence, and (b) that the People failed to prove the accused had a specific intent to commit robbery. The record shows that about 6:00 P.M. on December 4, 1947, Ignatowski and plaintiff in error chanced upon each other in a tavern operated by the latter's mother in Burnham. Ignatowski had been there since midday celebrating his release from the merchant marine, while plaintiff in error had driven up from his place of employment in Watseka, Illinois, for the avowed purpose of transacting some personal business with his mother. The men had previously known each other and renewed their acquaintanceship over several rounds of drinks. They left the Urban tavern and went to others where they continued to imbibe freely. One of such places was a tavern owned by George Johnson in Glenwood, Illinois, approximately five miles from the Urban tavern. Plaintiff in error had visited the place before and was known there but Ignatowski was a stranger. Both men stated that their purpose in

stopping was to allow Ignatowski to make a phone call to a lady friend. Ignatowski stated that, at the time, they were both intoxicated and staggering, while plaintiff in error stated that, while he had had a number of drinks, he was in full control of his senses and faculties.

It was shortly after ten o'clock when the men entered the Johnson place. Johnson, his wife, Leona, and Bertha Keys, a cook, were working, and some fourteen patrons were in the tavern seated either at the bar or at tables in an adjacent dining room. Ignatowski proceeded immediately to a washroom while plaintiff in error took a stool at the bar and was served two drinks by Johnson. The latter testified that Ignatowski came out of the washroom, walked to the bar and asked Mrs. Johnson for the use of the phone; that when she told him it was out of order, Ignatowski said "Oh, hell," and returned to the washroom, only to reappear a few minutes later; that he stopped at a juke box, then went on to the bar where he said something to plaintiff in error. Johnson testified that Ignatowski then walked into the dining room and that he, the witness, retired from behind the bar to the kitchen; that shortly thereafter he saw Ignatowski peering at him through a service window in the kitchen wall. He stated that he next heard a door slam and thinking that Ignatowski had entered the ladies room, turned to go in that direction; that as he did so Ignatowski came upon him with his arm outstretched and rammed a hard object into the witness's stomach and said something which witness could not hear because of deafness. Johnson stated that he pushed his assailant's hand away from his stomach and procured a gun he kept on a kitchen shelf, whereupon Ignatowski maneuvered himself into a position where Johnson was afraid to shoot for fear of hitting the cook, broke out of the witness's grasp and ran into the barroom shouting "Let 'em have it." Johnson testified that he moved in the other direction to an auxiliary room in the rear, where he pulled

a master switch that turned off all the lights in the place. Just as he did so he heard a shot fired. He was of the opinion that the entire episode covered from eight to ten minutes. He did not know what the object was that Ignatowski held in his hand, but stated he had severely bruised his hand when he struck the object during the melee. He stated that, as far as he knew, plaintiff in error remained seated at the bar from the time he entered and said nothing.

Leona Johnson also testified to Ignatowski's movements and to the fact that plaintiff in error remained seated on a bar stool. She stated that after Ignatowski had asked her about the telephone he passed plaintiff in error and the latter said: "Why don't you get going?" At this point a customer seated next to plaintiff in error wanted a drink and she stated that while serving it she saw plaintiff in error pointing a gun at her; that she could just see the point of the gun; that he looked at the gun and looked at her but said nothing. Her only admitted reaction to this was to pretend to search under the bar in an effort to make plaintiff in error think she was looking for a gun. She made no outcry nor gave any alarm, but according to her testimony she picked up some empty glasses from the bar and turned her attention to Ignatowski who had just come from the dining room and tried the door of the ladies' rest room which was locked. The witness stated that she asked Ignatowski what he wanted; that he made no reply but pushed her aside and made a motion toward her husband with his hand in his pocket, whereupon she shouted "George, it's a holdup." She described her position at the time as standing with one foot in the doorway leading to the kitchen and one foot in the barroom. This is difficult to reconcile with the fact that she did not witness the struggle in the kitchen, and with her testimony that she was behind the bar when Ignatowski emerged from the kitchen allegedly shouting "Let them have it," and with the statement of

two of the patrons that she was standing behind the bar talking to them at the time. When the witness saw Ignatowski run from the kitchen, she ran to the auxiliary room in the rear and was there when the lights were turned off and the shot fired.

Bertha Keys, the cook, also told of what occurred in the kitchen and testified that as Ignatowski entered the kitchen with his hand in his pocket, he said "Stick them up!" On cross-examination she stated that she heard "somebody" say "stick them up," and on redirect examination reiterated that it was Ignatowski. She also told of hearing Mrs. Johnson shout "It's a holdup." The witness stated that she did not see plaintiff in error as she was never in the barroom.

Six of the customers present in the tavern were called as witnesses and to some extent corroborated the testimony of the foregoing witnesses as to different phases of the occurrence, while other portions of their testimony were repugnant or presented new aspects. One Merrill testified that Ignatowski had brushed against her as she was seated in the dining room and that she had felt a hard object in his coat pocket. Two of the patrons, Lorenz and Urban, (no relation to plaintiff in error,) were seated at the bar adjacent to plaintiff in error. Neither saw him point a gun at Mrs. Johnson, though Lorenz testified that as Ignatowski was leaving the building he saw a gun in the hand of "the other man." He could not identify plaintiff in error as "the other man." The other witnesses testified that a shot was fired by the "tall man" and in the record it is established that Ignatowski was taller than plaintiff in error. None of the patrons heard any person other than Mrs. Johnson state that it was a holdup. Most of them testified that as Ignatowski came from the kitchen he shouted "Let them have it!" but Urban's version was that he said "Shoot the —— —— —— ——." These witnesses testified that as the two men were leaving the tavern the

lights went out, and simultaneously a shot was fired into the ceiling. From what they could see in the dark, most of the witnesses concluded that Ignatowski had fired the shot. Several witnesses testified to seeing the two men enter a car and race away from the curb, narrowly averting a collision as they did so. Their description of the car tallied with the one admittedly driven by plaintiff in error.

The next witnesses called by the People were the various police officers who participated in the arrest of the two accused men. They told of locating plaintiff in error's car in the rear of his mother's tavern and of finding him asleep on a couch in a rear room. They stated that while he smelled of liquor he was not intoxicated. Ignatowski was found in bed at his home. No gun was found on either man or on the premises where they were arrested. The officers testified that, during questioning, Ignatowski said that plaintiff in error had the gun, while the latter told them Ignatowski had it. It was brought out by their testimony that when Ignatowski was arrested, his sister, Florence Ignatowski, who was present, exclaimed: "You went out looking for trouble and you know you are going to find trouble then," and that when asked if her brother had a gun, she said: "I think he had a gun but I don't know if there is a gun around." When called as a witness for the defense, she denied that she had said her brother had a gun. No gun was ever found by the officers.

Plaintiff in error, Ignatowski and the latter's sister were the only witnesses for the defense. Both men told of their meeting and subsequent drinking at various taverns, and of their stop at the Johnson tavern to permit Ignatowski to make a phone call. Ignatowski said that he was so drunk he did not know what he was doing, and denied ever owning a gun. He told of asking Mrs. Johnson for the use of the telephone and stated that he did not hear her answer; that plaintiff in error asked if he had made his phone call and told him to "get going;" that he then went

to the back end of the tavern looking for a phone, where he looked in the dining room, through the service window into the kitchen, and that he started into the kitchen. He further testified that as he went into the kitchen Mrs. Johnson pushed him so that he almost fell on Mr. Johnson; that the latter pulled a gun, whereupon the witness ran from the place shouting to plaintiff in error, "Come on, somebody is trying to kill me, let's get out of here!" He denied having stated "This is a stickup," or that there was any plan or intention on his part or that of plaintiff in error of committing a robbery.

Plaintiff in error testified that he had stopped at the Johnson tavern to permit Ignatowski to make a phone call, and to get a drink for himself; that at the time he was on his way to Watseka, where he was employed at a night club, but did not continue on later because of his excessive drinking. He related that he sat next to Lorenz and Urban at the bar; that he did not have or display a gun and that he did not know what occurred to Ignatowski in the back room, but that the latter returned looking scared and said, "Come on, let's get out of this crazy place." Plaintiff in error then left, and admitted almost having a collision in driving away, but stated that it was caused by another car which approached him at excessive speed. He told of driving to his sister's home, of changing his mind about driving to Watseka, and of returning to his mother's tavern, where he was arrested. He, too, denied having a gun or having seen Ignatowski with one.

In rebuttal, the People introduced photographic evidence of the scene of the crime, which is evidently not pertinent to this review. In addition, evidence was introduced tending to prove that plaintiff in error had been previously tried and found guilty of robbery while armed with a pistol, and sentenced to the Illinois State Penitentiary. Motions for directed verdicts were made on behalf of each defendant and denied. As previously stated, the jury found

the plaintiff in error guilty as charged and the court entered judgment on that verdict. The record does not disclose the finding or judgment as to Ignatowski, who is not a party to this writ of error.

The errors assigned all go to the sufficiency of the evidence, the first being that it fails to prove that plaintiff in error is guilty of attempted robbery beyond a reasonable doubt. Although the determination of facts, credibility of witnesses and weight of evidence are primarily functions reserved to the jury, it is, in criminal cases, the duty of this court to carefully review the evidence, and if there is not sufficient to remove all reasonable doubt of the defendant's guilt, and create an abiding conviction that he is guilty, the conviction will be reversed. (*People* v. *Holt,* 398 Ill. 606; *People* v. *Kazmierczyk,* 357 Ill. 592.) Where a record leaves us with grave and substantial doubt of the guilt of the defendant, we will reverse the judgment. (*People* v. *Willson,* 401 Ill. 68; *People* v. *Bradley,* 375 Ill. 182.) It is our conclusion that the evidence in the record here presented is insufficient to prove the plaintiff in error guilty of the crime with which he was charged, *i.e.,* assault with intent to commit robbery.

The majority of the testimony is that plaintiff in error did nothing in the Johnson tavern, except to comport himself as any other patron by sitting at the bar and having a drink. Mrs. Johnson's testimony that he pointed a gun at her is not corroborated by other witnesses who sat adjacent to plaintiff in error at the bar. It is difficult to believe that had a gun been pointed at her she would have continued with her bartending duties or have stopped to engage Lorenz and Urban in casual conversation. Further doubt is thrown upon the accuracy of her version from the highly conflicting testimony as to her whereabouts during the melee in the kitchen. She states she was in the doorway of the kitchen, other persons placed her behind the bar near the kitchen, while Lorenz and Urban stated she

was standing behind the bar talking to them as Ignatowski emerged from the kitchen. It is true that Lorenz, in testifying about Ignatowski's departure, said he saw a gun in the hand of the "other man," yet he was not able to identify plaintiff in error as the "other man" nor was he corroborated by the other witnesses in this respect. The only statement attributed to plaintiff in error was his remark to Ignatowski to "get going," which certainly is not indicative of an intent to commit a robbery even if the remaining evidence was to be construed against him. It is highly possible that he was trying to hurry his friend to make his phone call.

While the demeanor of Ignatowski, plaintiff in error's companion, was not orderly and left much to be desired, we are of the opinion that the record here leaves substantial doubt as to whether his conduct constituted an attempt to commit robbery. It is true that he entered the kitchen where he had no right to be, but it is more plausible that he went there in his search for a telephone, than to commit robbery, for it does not appear that there was any safe, register or money kept in the kitchen. George Johnson testified that Ignatowski jammed something hard into his stomach, that he, Johnson, pushed the hand away and got a gun from the shelf. The cook, the only other witness to the occurrence in the kitchen, stated that as Ignatowski came into the kitchen, Johnson wheeled and got his gun, "snapped" Ignatowski on the hand and pushed him. She stated that Ignatowski said "stick them up!" when he came into the kitchen, but when cross-examined on the point she said "someone" said it. No other person, not even Johnson who was in the kitchen, heard Ignatowski make such a statement. Johnson pleaded deafness, but from his earlier testimony we note that he overheard without difficulty when Ignatowski asked for the use of the phone. If, as the cook stated, Johnson grabbed his gun the instant Ignatowski entered the kitchen, this well explains his urge to leave,

and discounting the cook's weakened testimony that someone said "stick them up," such testimony leaves some doubt as to who was the aggressor. Mrs. Johnson, concluding from what she saw or heard in the kitchen, shouted "It's a holdup," but such a conclusion would not make the statement true.

As pointed out, the record leaves substantial doubt that plaintiff in error was guilty of the crime charged. While not conclusive, it is difficult to conceive that he would attempt such an open robbery in a place where he was known. There is much in the record which creates an impression of innocence and substantial doubt as to guilt of the plaintiff in error. The judgment against him is reversed, and inasmuch as it does not appear that there are witnesses available other than those who have testified, the cause will not be remanded for a new trial. *People* v. *Bradley,* 375 Ill. 182; *People* v. *Dewachter,* 353 Ill. 266.

*Judgment reversed.*