**People of the State of Illinois, Plaintiff-Appellee, v. Kelly Payton, Jr., Defendant-Appellant.**

Gen. No. 65–95.

Fifth District.

June 29, 1966.

Kassly, Weihl, Carr & Bone, of East St. Louis (Donald E. Weihl, of counsel), for appellant.

John M. Karns, Jr., State's Attorney of St. Clair County, of Belleville (John F. O'Connell, Assistant State's Attorney, of counsel), for appellee.

MORAN, J.

Defendant appeals from a conviction of rape in the Circuit Court of St. Clair County, Illinois.

He contends that the evidence does not support a finding of guilt beyond a reasonable doubt, that the court erred in allowing rebuttal evidence alleged to be hearsay, and that the People's rebuttal argument was prejudicial.

The complaining witness, Mrs. Jessie Beard, testified that on April 15, 1963, she attended a dance with her husband. At the conclusion of the dance, she and some of her girl companions visited two of the neighborhood taverns in the area, the last of which was one block from her home. After leaving her companions at about 2:00 a. m., she walked toward her home. Soon thereafter she was attacked by a man whom she later identified at a police lineup as the appellant, Kelly Payton, Jr. After an initial struggle in which the appellant seized a gun carried by Mrs. Beard, he forced her at gunpoint to walk to the Intercoastal Paint Company plant where he raped her twice. Then after being alerted by a passerby, he forced her to walk to a set of railroad tracks near the plant. After forcing her to lay her head on the track,

he made her get up and walk down the track, firing a shot after her. She walked to a service station close to the tracks and told the night manager that she had been raped and that he should call the police. He testified that her clothes were torn and dirty and that her face was bleeding. She arrived at the station at about 4:00 a. m.

After the police arrived, Mrs. Beard showed them the scene of the crime. The police found a black wallet containing the appellant's identification. It was not weathered, dirty, or wet with dew. Thereupon Mrs. Beard was taken to a hospital, examined, and treated. On April 22, 1963, the appellant was arrested. Mrs. Beard identified him in a lineup shortly thereafter.

At the trial, four alibi witnesses testified on behalf of the appellant. However, after the testimony of two of the witnesses, Moore and Murdock, who testified that they were with the appellant from 2:00 a. m. to 3:45 a. m., Mrs. Beard's cousin, a Mrs. Lodie Mae Swift, testified that she had overheard a conversation between these two witnesses before they testified. She said she heard Moore say to Murdock that "he was going to get paid to come up here and lie; he was going to have to get paid to come up here and lie." The appellant's objection to this testimony on the ground that it was hearsay was overruled. Murdock returned to the stand the following day and denied the statement. Moore failed to appear although contacted by the defense attorney and the State's Attorney's office.

The jury returned a verdict of guilty and the court sentenced the appellant to a term of not less than five nor more than twenty years in the state penitentiary.

Appellant points out numerous inconsistencies in the testimony of Mrs. Beard and other prosecution witnesses. Mr. Beard testified the dance was over at about 1:30 a. m., and Mrs. Beard testified the dance was over

about 10:00 p. m. Mr. Beard testified that a white gold ring was stolen from his wife; Mrs. Beard testified that a yellow gold ring was stolen. Mrs. Beard testified that there were four or five men in the lineup; the officer in charge testified that there were only three men. Mrs. Beard testified that the gun was in her bosom and that she did not attempt to use it at the place where she was first accosted; that she did attempt to use the gun when they got to a field. The policeman, to whom she reported the incident, testified that she told him the gun was in her purse and that she attempted to use it when she was first accosted under a street light.

█ The appellant then relies upon People v. Weisberg, 396 Ill 412, 71 NE2d 671, in which the court held that:

> We have held, however, that evidence will be closely scrutinized where it is conflicting, if incompetent evidence creeps in (People v. Rogers, 348 Ill 322, 180 NE 856); or where there is misconduct upon the part of the prosecuting attorney (People v. McLaughlin, 337 Ill 259, 169 NE 206); or if there are other circumstances during the trial of the case which might have the effect of diverting the jury from considering the competent evidence (People v. Gordon, 344 Ill 422, 176 NE 722).

The appellant's theory is, therefore, that even though the weight of the evidence is for the jury to determine, its determination is not final where incompetent evidence is admitted or where improper argument was used. A final determination of this issue must depend upon an analysis of the other issues, for the inconsistencies noted are not by themselves sufficient for reversal.

Lodie Mae Swift, a cousin of the complainant, testified that she was in the court every day since the trial started. She was in the courtroom "this morning" when

Arthur Moore testified and was in court when the man immediately before him testified; that she did not know them before; that she heard their testimony "this morning." She testified that when the court recessed she left the courtroom to eat and when she returned she sat "out there." The two men were leaving when she went "out there." When she came to the court that morning she sat on a chair "and then immediately people started coming back there and these two fellows was just as you come downstairs on the two chairs down on the end; the last one who testified, he whispered to the other one, this was before they had testified in the courtroom. They were sitting there. There was about three of them. I overheard a conversation between two of them. The man who did the talking was the man who testified last. He says to the other guy that he was going to get paid to come up here and lie; he was going to have to get paid to come up here and lie. That is what was said by the last man who testified and the other man is the first man who testified."

Payton's counsel: "I will object on the basis of hearsay. We have no opportunity of cross-examination on this; the party isn't a party to this lawsuit or trial. What this witness might quote from other witnesses as saying certainly is invading the hearsay rule." This objection was overruled.

On cross-examination Lodie Mae Swift said they weren't whispering and she heard them say this as she walked by.

Frederick Murdock was recalled by the defendant and testified that he was outside the courtroom in the corridor with Arthur Moore and Carolyn Washington. He stated that Arthur Moore did not say anything to him about his testimony's going to be a lie, but he did say, "I am not going to get paid for the time I lost today but it was for a worthy cause." The record discloses that defense counsel contacted Moore at his place of

employment in St. Louis, Missouri, but was unable to get him to return to the stand.

The appellant argues that it was reversible error to admit the testimony of Lodie Mae Swift because it was hearsay; and that, since the two defense witnesses were important in that they established an alibi for the appellant for the time during which the crime was supposed to have taken place, the admission of this hearsay testimony was highly prejudicial and constituted reversible error. Appellant further urges that even though this evidence might be considered impeaching evidence as to the bias or corruption of the two witnesses who testified, it was still inadmissible because no proper foundation had been laid for its admission.

■ Generally, testimony to a conversation between third parties is hearsay and is incompetent on the objection by the opposite party, especially where the conversation occurred out of his presence, unless it is offered by way of impeachment. Callaghan's Illinois Evidence, Volume 5, pp 222–224. Jones v. Cline, 84 Ill App 428, involved a claim against an estate. Appellant urged that certain conversations which took place between two witnesses in the absence of appellant were improperly admitted into evidence. One witness had said to the other witness that the deceased did not leave anything when he died and made other statements concerning the financial condition of the deceased in his lifetime and made statements concerning the condition of his estate after his death. The Appellate Court held the conversations inadmissible, saying at page 429:

> As the doctor was not a party to the record, nor was shown to have been interested in the decedent's estate, it was improper to admit in evidence over the objections of the appellant, such conversations. The only way that statements made by the witness, Dr. Jones, could be properly admitted as

evidence against the appellant was by way of impeachment, and after the proper foundation therefor had been laid. This, the record shows, was not done, hence the evidence was improperly admitted.

However, appellee in the case at bar argues that Mrs. Swift's testimony was not hearsay but was admissible for impeachment purposes to show that the state of mind of Arthur Moore prior to testifying was corrupt. Evidence offered by way of impeachment has been held admissible as an exception to the hearsay rule. Callaghan's Illinois Evidence, Volume 5, page 224.

In People v. Lechner, 60 Ill App2d 472, 208 NE2d 898 (a recent case decided by this court) we did hold this type of evidence admissible to impeach a witness's credibility. In that case defendant's wife who testified on his behalf had phoned her mother, the complaining witness, prior to the trial. She was not interrogated regarding the telephone call on direct examination, but was asked on cross-examination: "Did you in any such conversation at that time say to your mother that if your mother didn't drop the case that Joe would make you say that your mother was crazy?" She answered, "No sir." In rebuttal, the People called a witness who testified that he had heard the phone call between the wife of the defendant and the complaining witness and that the wife had made the statement that she denied making. We held that this rebuttal testimony was admissible under these circumstances to impeach the witness's credibility.

■ In the present case, if Moore had been asked first whether he had made the statement that Lodie Mae Swift had said he had made and he then denied making that statement, Lodie Mae Swift's testimony would have been admissible to impeach his credibility. However, the State contends that since defendant's objection was based on Lodie Mae Swift's testimony being

hearsay and since defendant did not make the objection that no proper foundation was laid for Lodie Mae Swift's rebuttal testimony, defendant has waived this objection so that this error cannot be raised by defendant in a court of review.

■ Before a witness may be impeached by a prior statement, a proper foundation must be laid in order to alert the witness, avoid unfair surprise, and to give the witness a chance to explain. The witness must first be asked as to the time, place and persons involved in the alleged conversation; secondly, he must be asked whether he made a certain contrary statement at that time. Here neither of the requirements were satisfied. People v. Rainford, 58 Ill App2d 312, 208 NE2d 314, and the cases cited therein. When the impeaching witness is produced, the proper course is simply to ask him whether or not the witness to be impeached made the statement in regard to which he has been questioned at that time and place mentioned. It is improper to ask the impeaching witness to relate the whole conversation. Elgin, J. & E. Ry. Co. v. Lawlor, 132 Ill App 280. A proper foundation must be laid for subsequent impeachment for bias just as when impeaching by a prior inconsistent statement. People v. Rainford, supra, McCormick on Evidence, page 84.

In the present case there was no attempt by the state to lay a foundation for Lodie Mae Swift's testimony. She was asked to relate a conversation between two people held out of the presence of the accused and with no opportunity for him to cross-examine. Since none of the preliminary questions to qualify this evidence as impeaching evidence were asked, defense counsel would have no way of knowing that this evidence was offered as impeachment evidence, absent a statement by the prosecutor that this was the purpose of Lodie Mae Swift's testimony.

■ Under the circumstances, we hold that the defendant is not precluded from questioning the lack of foundation for this evidence even though he did not make this particular objection in the trial court. Smith Hurd, chapter 38, par 121–9; People v. Bradley, 30 Ill 2d 597, 198 NE2d 809.

■ The appellant also argues that the People's rebuttal argument was highly prejudicial and improper. Some of the things said in the rebuttal argument were:

> Now remember that in this year of 1963 a colored woman has the same dignity and is entitled to the same respect under the law as any of you. If some of you still don't feel that remember that it is just a short distance from 13th and Walnut to east on State Street. It is just a short drive up to Belleville and if you don't stop a rapist in his own area, he is going to get to another area.
>
> . . .
>
> If this beast isn't sent away, God help East St. Louis and St. Clair County.
>
> . . .
>
> It could only be some abnormal feeling inside you which would say, we are not going to send anybody to the penitentiary. If you have that feeling—anybody—you are guilty of a crime yourself, and you know it, because you have taken a solemn oath that you are going to follow the law, and we have to have the law followed here.
>
> . . .
>
> Do your duty. If you do your duty now you can say your prayers at night and mean them. If you don't do your duty now, in my opinion you are committing as great a crime as this beast did.

These remarks by the State's Attorney were highly inflammatory and violated the defendant's right to a fair

trial. The language of our Supreme Court in The People v. Anderson, 406 Ill 585, 94 NE2d 429, at pp 592, 593 is as follows:

> . . . Much is said about the conduct of the State's Attorney otherwise, including his violation of the rule that a State's Attorney arguing to the jury must not state his own opinion of the guilt of the defendant.
>
> The very nature of cases of this kind demands the exercise of extreme care in preventing improper evidence and prejudicial argument which might deprive a defendant of that fair and impartial trial to which everyone, both guilty and innocent, is entitled. Under the state of the record here we are constrained to grant a new trial, for the reason we are of the opinion the defendant has not had that fair and impartial trial to which he is entitled.

In People v. Lettrich, 413 Ill 172, 108 NE2d 488, the court said at page 181:

> . . . The jury must try the case according to the law of the evidence, and what the people of the State may want, what other jurors have done before, and what the State's Attorney thinks about the guilt of the defendant are clearly irrelevant and incompetent.

For the foregoing reasons the conviction of the appellant is reversed and this case is remanded to the Circuit Court of St. Clair County for a new trial.

Reversed and remanded.

EBERSPACHER and GOLDENHERSH, JJ., concur.