THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JEFFREY MAYFIELD *et al.*, Defendants-Appellants.

First District (4th Division) No. 78-34

Opinion filed May 24, 1979.

James J. Doherty, Public Defender, of Chicago (Sam Majerowicz, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Pamela L. Gray, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The defendants, Jeffrey Mayfield and Lamark Johnson, were jointly tried before a jury and were both convicted of armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—2), and sentenced to a minimum of four years and a maximum of four years and one day with the Illinois Department of Corrections. On appeal defendants contend: (1) their guilt was not established beyond a reasonable doubt; (2) the trial court erred in restricting impeachment of the complaining witness concerning his attempt to have the charges against the defendants dismissed; (3) the trial court abused its discretion by restricting cross-examination of the complaining witness concerning matters tending to support the defense theory of the case; (4) defendants were unduly restricted in their efforts to present testimony concerning the bias and motivation of the complaining witness; (5) defendants were prejudiced by the improper closing argument of the prosecution; and (6) they were prejudiced by the court's response to the jury's request to see a police report.

We affirm defendants' convictions.

Andre Bird testified for the State that on May 3, 1976, at about 8:30 p.m., he and Brian Ridley were playing basketball with some others at 71st and Lowe in Chicago. He and Ridley stopped playing at nine and walked toward 69th and Halsted where they intended to catch a bus. At that intersection Bird saw the defendants, whom he identified in court. Mayfield asked Bird if he wanted to buy a revolver and Bird said no. Bird walked into the street to look for the bus and returned to the sidewalk, where Mayfield again asked if he wanted to buy a gun. At this time Ridley was six to 10 feet away, talking to a friend who had walked by. Bird again refused the offer of sale. Mayfield and Johnson spoke to a group of people who had arrived. When the people left Mayfield brought out the gun, which was in a hat, inside a bag he was holding. He asked Bird a third time if he wanted to buy it. When Bird refused, Mayfield announced a "stick-up." Bird, who had known the defendants for three years from playing basketball with them, asked why they would hold up someone they knew. However, Mayfield told him to proceed east on 69th Street and Bird complied. Ridley, who was still six to 10 feet away, asked where they were going but was told by the defendants to get away. The three walked east down 69th; Mayfield was behind Bird with the gun and Johnson walked in front of Bird. They turned into an alley where Mayfield again declared this was a "stick-up." Bird asked why they were going to rob him, but kept walking when Mayfield told him to do so. In the middle of the alley the defendants demanded money and Bird refused. Johnson said that Bird "must think we playing something." Mayfield handed the gun to Johnson and struck Bird in the eye. Bird then gave 10 $1 bills and his watch to Mayfield, who gave the watch to Johnson.

Johnson informed Bird they usually killed people after they robbed them. Bird told them he would not tell anyone about it and they then fled. Bird returned to 69th and Halsted where he saw Ridley and related what had happened. They saw a police car near the intersection and reported the robbery to the police.

On May 4, 1976, Bird looked for the defendants with the police in a police car. At 69th and Ashland Bird saw them and pointed them out to the police. One officer "grabbed" Johnson and another pursued Mayfield down the street. When Mayfield was caught the police showed Bird a revolver. He told them it looked like the same gun used against him. He was again shown the gun in court and again indicated it looked like the gun used.

On cross-examination Bird admitted that he used to gamble but denied playing dice with the defendants on May 3, 1976. He also denied that the money taken from him was won in a dice game or in basketball; he indicated he earned it. The 10 $1 bills taken were folded over each other at the time. Objections were sustained to questions asking him whether this was the normal way people who shot dice and played cards folded their money and whether he recognized this as a "hustler's fold." Bird admitted that in an earlier court hearing he indicated that he wanted to drop the charges.

Defendants were not permitted to present the testimony of an assistant public defender, who, according to the offer of proof, would have testified that Bird identified himself as the complaining witness and said he wished to drop the charges. This was after the public defender heard Bird make the same statement to the clerk when the case was continued.

Two Chicago police investigators, Gerald Hansen and John Kinnane, testified to the circumstances of the arrests. They confirmed that Bird pointed out the defendants from the police car. The officers got out of the car and announced their office, at which point the defendants ran. Hansen arrested Johnson after he had run about 20 feet. Kinnane chased Mayfield and arrested him after he had jumped over a fence, dropping a gun in the process. He identified a gun produced in court as the one Mayfield had dropped.

Defendants presented the testimony of Officer James Nelson. On May 3, 1976, at about 9:15 p.m. he spoke to Bird at 60th and Halsted. Bird told him he was "walking at" 69th and Halsted when the defendants approached and displayed a handgun. They made Ridley walk on and took Bird to an alley. Johnson had a gun and Mayfield struck Bird in the eye with the gun. However, Bird did not say that Johnson had the gun entire time.

Lamark Johnson testified that on May 3, 1976, at about 8:30 p.m. he

and Mayfield were at the corner of 69th and Halsted when Bird and Ridley approached. Bird and Mayfield discussed the fact that Bird had broken into Mayfield's brother's basement. The State objected when Johnson was asked what was said, but he did state that at the end of the conversation Mayfield said as far as he was concerned it was all over with. Mayfield then produced some dice and asked the others if they wanted to "shoot some." Ridley did not accompany them but the defendants and Bird went into an alley and shot dice for about half an hour. During this period Bird consistently lost money to the defendants. He told them they could not win his money like that, that he was broke, and would get his money back one way or the other. Bird then walked away. Johnson did not have a gun nor did he see Mayfield with one. No one robbed Bird at gunpoint. He did not strike Bird and did not see Mayfield strike him. He did recall that Mayfield and Bird had a fight two weeks before the dice game. Johnson was asked whether this fight was the subject of the conversation between Mayfield and Bird but the State's objection to his response was sustained. Johnson denied running when the police arrested him. He did not see Bird in the police car at that time until he himself entered the car. He testified that he had shot dice with Bird many times before and had met him in a dice game. Bird had testified that he never played dice with Johnson and had not met him while shooting craps.

## I.

■■ Defendants contend that Bird's account of being robbed by two people he had known for years was improbable, uncorroborated and contradicted by other witnesses. The contradictions cited, however, are minor or nonexistent. Officer Nelson's recollection that Bird said he was walking at the intersection does not clearly contradict Bird's testimony that he was standing there and periodically walking into the street to see if the bus was coming. While it is true there was no testimony that Bird had a bruised or black eye as a result of being struck, he was never asked whether this was the result. He did state that he could still see out of the eye after the blow, though his vision was blurred, indicating the blow was not that serious. Officer Nelson's recollection that Bird reported being struck by Mayfield with a gun is corroborative as to who struck the blow but contradictory as to what was used. This presented a matter of credibility for the jury as the trier of fact, as did the question of the probability of two acquaintances robbing Bird. In *People v. Urban* (1949), 403 Ill. 420, 86 N.E.2d 219, cited by defendants, the court did cite the improbability of a man committing a robbery in a place where he was known. But this was only one factor in their determination that reasonable doubt of the defendant's guilt remained. There the testimony of most of the State's eyewitnesses tended to exculpate the defendant. The one

eyewitness who implicated the defendant was herself discredited by other State witnesses. In this cause a single eyewitness clearly identified the defendants, whom he had known for years, as the men who robbed him at gunpoint. The robbery was promptly reported to the police and the next day the witness pointed out the defendants to the police. Such positive and credible testimony, even though by a single witness, would in itself be sufficient to sustain a conviction despite contradiction by the accused. (*People v. Rodriguez* (1978), 58 Ill. App. 3d 562, 374 N.E.2d 904; *People v. Lee* (1975), 33 Ill. App. 3d 45, 337 N.E.2d 381.) In addition there was testimony that the defendants fled the police, who were accompanied by the victim at the time. Under these circumstances the jury could have found this to establish a consciousness of guilt to be considered along with the other evidence. (*People v. Pierce* (1975), 26 Ill. App. 3d 550, 325 N.E.2d 758, *aff'd* (1976), 62 Ill. 2d 223, 341 N.E.2d 705.) Defendants argue that the failure of the State to call Brian Ridley to the stand contributed to creation of a reasonable doubt in this case. But as defendants note in their brief, the name and address of Ridley was supplied to them by the State six weeks before trial. No negative inference is raised by the failure of the State to call a witness where that witness is also known and available to the defense. *People v. Lee* (1975), 33 Ill. App. 3d 45, 337 N.E.2d 381.

■■ All these matters were argued to the jury at trial and that body, as the trier of fact, obviously believed the testimony of Andre Bird. A reviewing court will not substitute its credibility determination for that of the trier of fact unless the evidence is so improbable as to create a reasonable doubt of the defendant's guilt. (*People v. Rodriguez* (1978), 58 Ill. App. 3d 562, 374 N.E.2d 904.) The jury's determination in this cause was amply supported by the evidence.

## II.

During cross-examination of Andre Bird the following took place:

"Q. Mr. Witness, you recall being in this Court building on June 2nd, 1976?

A. I do not remember.

Q. Do you recall going up to Judge Mackoff's Courtroom at some date in June?

A. I remember going to a Courtroom I think.

Q. On the 4th floor of this building?

A. I don't remember that.

Q. Do you recall talking to an Attorney in that Courtroom who at the time was Mr. Mayfield [*sic*] and Mr. Johnson's Attorney?

A. I don't remember.

Q. You don't remember

A. No.

Q. You don't remember talking to that Attorney and telling him that you wanted to drop the charges?

A. I was going to drop the charges because, for the simple reason—

Q. Do you recall talking to that Attorney and telling him you wanted to drop the charges. That's the question, Mr. Witness.

A. I don't know if that was they [sic] lawyer or not. He probably tricked me, you know.

Q. He probably tricked you?

A. Yes."

At this point the State objected and requested a side bar conference. When the trial judge stated his intention to instruct the jury that it was up to the State whether to drop charges, this satisfied the State's objection and the cross-examination continued. However, the State again objected when the witness was asked how the attorney tricked him. During the ensuing conference the judge indicated his belief that the question was not relevant. Defense counsel first argued that the jury might believe Bird was tricked into asking to drop the charges, but then indicated that he only wished to obtain an unequivocal answer as to whether the witness offered to drop the charges. He agreed that if the witness responded affirmatively there would be no impeachment. The court first stated it would bar any further questioning in the area but then, with the understanding that the jury would be instructed as to who had the right to drop the charges, told counsel he would be permitted to ask further questions on the subject. The State asked that counsel be precluded from asking Bird questions as to what he told the attorney. Without a ruling from the court, defense counsel agreed to this, indicating that his only question would be whether Bird told a man at the hearing that he wanted to drop the charges. Bird was then asked this and stated that he did do so. Defense counsel did not ask to question him further. However, later in the proceeding, as we have noted, defendants sought to introduce the testimony of the assistant public defender that Bird had made the statement to him. Defense counsel indicated this would be for the purpose of correcting the impression that Bird was tricked into seeking to drop the charges and would also impeach Bird's testimony that he was tricked. The court held that the previous questioning was sufficient on the question of dropping the charges and any further questioning would be precluded as going to a collateral matter.

Defendants now contend that the trial court erred in restricting their examination of the witness concerning his former desire to drop the charges. Our review of the record establishes that defendants were not precluded from further questioning Bird as to his wish to drop the

charges. Defense counsel was permitted to ask further questions but chose only to establish that Bird had expressed that wish. The case is not analogous to those cited by defendants, *People v. Richardson* (1977), 48 Ill. App. 3d 307, 362 N.E.2d 1104, and *People v. Hughes* (1977), 51 Ill. App. 3d 985, 367 N.E.2d 485, in which State motions *in limine* barred any testimony concerning a complaining witness' wish to drop charges or his interest only in receiving restitution. Defendants here were able to establish that the complaining witness at one time stated he wished to drop charges. The issue of trickery clearly concerned Bird's knowledge that he was speaking to the defendants' lawyer, not whether he made the statement. As such it was within the discretion of the trial court to bar further evidence on that point as being collateral. See *People v. Hayes* (1975), 32 Ill. App. 3d 953, 337 N.E.2d 280.

### III.

■■ ■ Defendants also allege error in the restriction of their cross-examination of the complaining witness concerning the folded dollar bills taken from him. The extent of such cross-examination is a matter of discretion for the trial judge and only where that discretion has been clearly abused, resulting in manifest prejudice to the defendant, will a reviewing court interfere. (*People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286.) While the better practice might have been to permit this questioning inasmuch as it related to defendants' claim that they were gambling with Bird, we find no prejudice resulting to the defendants. Their theory of the case was well-established through the testimony of Johnson. They were permitted to ask questions of Bird which directly went to the question of whether he was gambling on that day with the defendants. Thus the question was adequately presented to the jury and no prejudicial error resulted from the restriction of questioning.

### IV.

■■■ Nor do we find prejudice arising from the restriction of questioning of Johnson concerning Bird's conversation with Mayfield. That conversation apparently related to earlier incidents in which Bird broke into the basement of Mayfield's brother and Mayfield got into a fight with Bird. Defendants cite *People v. McClure* (1976), 42 Ill. App. 3d 952, 356 N.E.2d 899, in which the trial court was held to have erred in barring testimony that seven years prior to prosecution for rape and armed robbery the complaining witness had accused another man of rape after he refused to pay her for sexual services. The error in that case was found to be harmless because of the remoteness of the incident and because the defendant was acquitted of rape. But the crucial difference is that in this cause defendants were permitted to establish the underlying incidents

which might show bias. The jury was made aware through this evidence of prior disputes involving the complaining witness and one of the defendants. Additionally, defendants did not lay a proper foundation, as is required for impeachment through evidence of bias, by asking the witness Bird about these prior incidents. (*Aneals v. People* (1890), 134 Ill. 401, 25 N.E. 1022; *People v. Payton* (1966), 72 Ill. App. 2d 240, 218 N.E.2d 518.) Again, *People v. McClure,* in which the court found no foundation was required, is not controlling. The evidence in that case tended to show a common design and thus was not actually impeachment. Here the defendants sought to impeach the complaining witness by showing bias which might motivate him to testify falsely. The trial court did not err in barring further questioning in this area where defendants had not laid a foundation for it. Furthermore, defendants made no offer of proof concerning what additional information they sought to obtain about these incidents from Johnson. No claim of error may be based on a trial court's refusal to permit a witness to answer a question where no offer of proof as to what the answer would be has been made. *People v. Schanda* (1933), 352 Ill. 36, 185 N.E. 183; *People v. Pohl* (1964), 47 Ill. App. 2d 232, 197 N.E.2d 759; *People v. Jones* (1976), 40 Ill. App. 3d 850, 353 N.E.2d 375.

## V.

■■■ Defendants claim they were prejudiced by the final argument of the prosecutor in which he stated:

"There is a phrase commonly known as smoke and sand. In legal circles, smoke gets in your eyes; sand gets in your eyes. You can't see, you are temporarily blinded. That is what these things are. They are thrown at you * * * Gambling is thrown up at you and you say gambling, but there is an armed robbery. So little bits are thrown up at you to get you away from the central focus of where your attention should be."

Similar remarks have been held not to prejudice defendants. (*People v. Weaver* (1972), 7 Ill. App. 3d 1104, 1107, 288 N.E.2d 669, prosecutor said defense counsel dropped a "veil of smoke" in front of the jury; *People v. Merritt* (1973), 16 Ill. App. 3d 72, 75, 305 N.E.2d 579, "Don't get caught in the smoke screen"; *People v. Palmer* (1970), 47 Ill. 2d 289, 300, 265 N.E.2d 627, prosecutor said defense counsel "* * * was attempting to raise a smoke screen.") We find no prejudicial error arising from the similar statements of the prosecutor in this cause. During closing argument defense counsel theorized that Andre Bird might have been threatened with perjury when he indicated he did not wish to pursue the matter. This was not based on the record and invited the prosecutor's argument in which he suggested that Bird's desire to drop charges may have arisen when he had to continually return to court. Although this, too, was not

based on evidence before the jury, defendants may not complain of argument which they have provoked (*People v. Reyes* (1970), 131 Ill. App. 2d 134, 266 N.E.2d 539), nor do we find any prejudice arising from it. The prosecutor's comments that they should take Andre Bird for what he was, that he was a "good kid," did not constitute a personal opinion of the veracity of the witness, as defendants suggest, but rather was part of argument that the jury should remember their observations of the witness in evaluating his credibility. Finally, the prosecutor's suggestion that the police would not risk their careers by lying was proper as a discussion of the credibility of the witnesses. *People v. Franklin* (1976), 42 Ill. App. 3d 408, 355 N.E.2d 634.

## VI.

■■ Defendants' final contention is that they were prejudiced when in response to a jury request for the "police report which was entered as an exhibit" the court responded that the report "was marked Defense Exhibit No. 1, for identification, was never offered or admitted into evidence." Although an explanation to the jury that they had received all the exhibits they were entitled to receive might have better clarified the matter, we find no prejudice resulting from the response. The police report was referred to by Officer Nelson during his examination. Our discussion of the issue of sufficiency of the evidence has established that any contradictions brought out by his testimony were minor. Consequently, defendants' claim that the jury might have believed that defendants were trying to keep crucial evidence from them is without foundation. Nor do we find merit in defendants' claim that the possible effect of this comment would be to make the jury believe they were tricked by defendants. No possible prejudice resulted from this communication with the jury and thus it does not require reversal of their verdict. *People v. Rettig* (1972), 50 Ill. 2d 317, 278 N.E.2d 781, *cert. denied* (1972), 409 U.S. 895, 34 L. Ed. 2d 152, 93 S. Ct. 186.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

JIGANTI, P. J., and LINN, J., concur.