**Sylvia Noumoff, Plaintiff-Appellant, v. Dorothy Rotkvich, Defendant-Appellee.**

**Gen. No. 51,416.**

First District, Fourth Division.

. September 20, 1967.

Rehearing denied October 23, 1967.

Albert B. Fritzshall, of Chicago, for appellant.

Heineke, Conklin & Schrader, of Chicago (Andrew H. Marsch and Randall T. Clair, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Plaintiff, Sylvia Noumoff, appeals from the judgment entered for the defendant and from the denial of her motion for a new trial after a jury verdict in favor of the defendant, Dorothy Rotkvich. This was an action brought by the plaintiff to recover damages under the Dram Shop Act (Ill Rev Stats 1957, c 43, § 135) [1] against Nicholas Rotkvich, Dorothy Rotkvich, Michael D. Mc-Farland and Loretta McFarland as defendants. The latter two defendants were covenanted out and are not now parties to this action. Nicholas Rotkvich died during the pendency of this action and the cause proceeded to trial against Dorothy Rotkvich alone. In this appeal plaintiff requests that the judgment be reversed and a

[1] This section provides in relevant part that:

Every person, who shall be injured, in person or property by any intoxicated person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person; and any person owning, renting, leasing or permitting the occupation of any building or premises, and having knowledge that alcoholic liquors are to be sold therein, or who having leased the same for other purposes, shall knowingly permit therein the sale of any alcoholic liquors that have caused, in whole or in part, the intoxication of any person, shall be liable, severally or jointly, with the person or persons selling or giving liquors aforesaid, . . . .

new trial granted, alleging various improprieties in the proceeding below which deprived her of a fair trial. In the alternative plaintiff requests this court to enter a judgment notwithstanding the verdict.

At the trial plaintiff testified that on the evening of November 14, 1958, she was driven to Nick & Dorothy's tavern (owned by Nicholas and Dorothy Rotkvich) by Michael McFarland where they spent several hours, but not in the company of each other. She further testified of the circumstances when they left the tavern:

> "Mr. McFarland was walking behind me. I got in on the passenger side of the car. Mr. McFarland got in on the driver side. The car was unlocked. He started to drive, stopped at the corner and turned south on Commercial Ave. Commercial Ave. runs north and south. After we got on Commercial Ave. he was driving very fast. I told him to slow down that he was speeding. I then smelled a heavy odor of liquor. He looked dopey like and I told him I wanted to get out and take a cab. I have ridden in automobiles before. It is my opinion he was going about 45 or 50 miles per hour.
>
> ". . . It was at 104th Street when I told him to slow down and be careful because he was driving so fast. It was just a matter of seconds after I told him to slow down and be careful that we crashed. The car veered off and crashed into a utility post."

Michael McFarland testified and admitted that he had been at the tavern with plaintiff and that he drank "three or four beers." He further stated:

> "When I left the tavern I was with Miss Noumoff. The weather was raining at the time. When I left the tavern my opinion was that I was sober. . . .
>
> "I can't recall who got in [the car] first. . . . [A]s we turned the bend, right around 104th and

Torrence, . . . a car was coming at me . . . , so I hit the wheel, and I must have hit it too hard. . . . I turned the wheel, and I turned it too quick, and the wheels skidded on the wet pavement, and that is when we collided with the lamp post."

Francis Gaffney, a police officer who investigated the accident in which plaintiff and McFarland were involved, also testified at the trial. He identified his signature on a police report of the accident (marked as Defendant's Exhibit Number 1 for identification) and stated that the report was accurate when made. While Officer Gaffney then testified as to McFarland's sobriety and physical condition at the time of the accident, it is unclear from the record whether the witness was testifying from his own recollection, from recollection refreshed by the police report or by reading from the police report itself. Subsequent to the testimony of Officer Gaffney defendant requested that the police report be admitted into evidence, but the request was denied. Defendant later adduced a copy of the report with a blocked-out portion which, over the strenuous objection of plaintiff, was admitted into evidence (Defendant's Exhibit Number 2). This exhibit contained two boxes. The first was entitled "sobriety condition" in which was checked "ability not impaired." The second box was entitled "physical condition only" in which was checked "apparently normal."

In contending that she did not receive a fair trial plaintiff contends, inter alia, that the introduction into evidence of Defendant's Exhibit Number 2 (the blocked-out portion of the police report) was prejudicial error.

In admitting the report as blocked out by defense counsel into evidence, the trial judge relied upon the doctrine of past recollection recorded. The basis for admitting a document into evidence under that doctrine was set forth by the Supreme Court of Iowa in State v. Easter, 185 Iowa 476, 170 NW 748, 749:

119

"Before a memorandum of this kind is admissible to prove the existence of a fact therein recorded, it must be made to appear that the fact therein recorded was correctly entered, and that the memorandum speaks the truth touching the disputed matter. It does not, of itself, prove the truth of the matters therein stated. The truth must be found in the testimony of some living witness who knows and can say that at the time the record was made he had personal knowledge of the matters therein recorded, and that he made, or caused it to be made, as a record of facts at the time within his knowledge. He may not be able to recall the transaction, by effort or memory; yet if he knows that the matters therein recorded were, at one time, within his knowledge, and that while so within his knowledge he made this record, that it was then his purpose or duty to truthfully record the facts therein stated, then the memorandum becomes evidence of the fact, not by reason of its recitals, but because by the testimony of the living witness, it is made reasonably certain that it speaks the truth."

The limited circumstances under which the document is admissible are set forth in Stanton v. Pennsylvania R. Co., 32 Ill App2d 406, 409, 178 NE2d 121, where the court quoted with approval from Diamond Glue Co. v. Wietzychowski, 227 Ill 338, 81 NE 392:

"Another condition under which a writing may be used is where the witness, after inspecting a writing, still has no independent recollection of the facts stated therein, but is able to state that he correctly reduced them to writing at the time of the occurrence or within such a time afterward that he had a perfect recollection of them."

In Stanton, supra, the document itself was introduced into evidence but was not given to the jury because por-

tions thereof were inadmissible even under the doctrine of past recollection recorded. However, rather than giving to the jury a blocked-out copy of the document revealing only the admissible portions, the witness was allowed to read the admissible portions during the course of her testimony.

■ Thus, the primary requisites to the admission of a document into evidence under the doctrine of past recollection recorded are: (1) the witness has no independent recollection of the facts and (2) after reviewing the document the witness has been unable to refresh his recollection. These requisites must be established by the proponent of the application of that doctrine before the aforesaid document or testimony therefrom is admissible into evidence. In the instant case, according to the report of proceedings, it is unclear whether Officer Gaffney was testifying from his own recollection, recollection refreshed after reviewing the police report, or from the report itself. This confused state of the record is demonstrated by the following excerpts therefrom during direct examination by the defense attorney (Marsch):

> "Q. Do you recall, or from the police report can you refresh your recollection as to whether you saw Michael McFarland at the scene? A. I can't recall. Q. Do you recall seeing him at all that evening, or that early morning? A. I saw him."
>
> . . . . . .
>
> "Did you have an opportunity to observe him while you were there? . . . Mr. Marsch: Q. While you were taking the statement? Court: You may answer. Witness: How long? Mr. Marsch: Approximately, your best estimate. A. I couldn't say how long it would actually take. Q. Well, your best estimate how long? Five minutes? Ten minutes? Fifteen minutes? A. I'd say—Well, let's see. Say fifteen.

Q. All right sir. And during this time you were speaking with him, isn't that correct? A. Yes, sir. Q. And were obtaining information concerning this report, isn't that correct, sir? A. Yes, sir. Q. Based upon that observation and that conversation do you have an opinion as to his condition of sobriety at that time? Mr. Fritzshall [plaintiff's attorney]: Object, he didn't—Court: Overruled. Mr. Fritzshall: He didn't state whether he remembered. He says he doesn't even remember—Court: Objection overruled. He may answer if he knows.

"Mr. Marsch: Q. Do you recall the question, sir? A. He had—I will have to—Q. Just do you have an opinion as to his condition of sobriety at that time? A. He had been drinking. Q. Do you have an opinion as to his condition of sobriety? Mr. Fritzshall: He answered he had been drinking. Witness: Ability not impaired. Court: Now wait. What is your objection? . . . Court: Objection overruled. You may answer his question. Mr. Marsch: Q. Do you have an opinion as to his condition of sobriety? A. Ability not impaired. Mr. Fritzshall: Object and move that be stricken. Mr. Marsch: Q. By that you mean that he was sober, is that correct, sir? Court: The answer may be stricken. Answer the question that Counsel propounds. Mr. Marsch: Q. Do you have an opinion as to his condition of sobriety? A. Yes, sir. Q. And what is that opinion? A. He's sober, according to this (referring to police report in his hand). Q. All right. Mr. Fritzshall: I will move to strike it. He says, 'He's sober, according to this,' and not as to his own recollection. Court: Objection be overruled. Mr. Fritzshall: Well, if your Honor—Court: The answer will stand. Mr. Marsch: Q. Now, Officer, have you been able to refresh your recollection from that document or from your personal memory as to the type of evening it was, as to dry, wet, raining, the weather conditions? A. The weather was rainy. The road

condition was wet. Q. Can you refresh your recollection now, either from that report or from your individual recollection, as to whether or not you gave Mr. McFarland any type of alcohol test?"

Although on cross-examination Officer Gaffney stated that he had no "independent recollection" of "anything about the accident itself," it is unclear whether the witness meant that even after reviewing the police report he had no recollection of the accident. We conclude that defendant did not establish: (1) that Officer Gaffney did not have an independent recollection of the facts relating to the sobriety and physical condition of Michael McFarland; and (2) that after reviewing the police report Gaffney was unable to refresh his recollection. Therefore, Defendant's Exhibit 2 (the blocked-out portion of the police report) was erroneously introduced into evidence under the doctrine of past recollection recorded.

■ Since Exhibit 2 further impressed upon the minds of the jurors, in addition to the testimony of Officer Gaffney, that McFarland was sober at the time of the accident (the sobriety of McFarland being an important issue in the case) the aforesaid error was prejudicial and deprived the plaintiff of a fair trial.

Plaintiff also requests for the first time on appeal that a judgment notwithstanding the verdict be entered in her favor. Since this relief was not requested in the post-trial motion, the issue cannot be considered on appeal.

Since we have found that plaintiff did not receive a fair trial, we need not consider the other alleged improprieties which plaintiff claims deprived her of a fair trial. The judgment is reversed and the cause remanded for a new trial in accordance with this opinion.

Reversed and remanded.

ENGLISH, P. J. and McCORMICK, J., concur.