THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MELVIN KELLEY, Defendant-Appellant.

(No. 53161;

First District—May 19, 1971.

Gerald W. Getty, Public Defender, of Chicago, (John T. Moran and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Nicholas A. De John, Assistant State's Attorney, of counsel,) for the People.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

Defendant, Melvin Kelley, was indicted and charged with the unlawful sale of a narcotic drug. At a jury trial he was found guilty and sentenced to life imprisonment in the Illinois State Penitentiary. Defendant appeals his conviction, alleging the following errors: (1) The State failed to disclose the identity of the police informer before trial which denied the defendant from effectively controverting the State's evidence; (2) The trial court admitted into evidence hearsay testimony that the informer was dead; (3) The prosecutor in his closing argument suggested that the informer needed protection after the prosecutor elicited testimony in front of the jury that the informer was already dead; (4) The trial court denied defendant's alibi instruction even though an alibi defense was raised; (5) The trial court did not grant defendant's motion to suppress even though the search of the defendant was unreasonable and (6) The State failed to prove beyond a reasonable doubt that the defendant perpetrated the crime of sale of narcotics. Because of our treatment of defendant's last contention and our determination to reverse outright, we need not consider his other allegations of error.

The indictment in the case at bar alleged the defendant knowingly sold narcotics to "Tom Johnson" on the 15th of August, 1966. Testimony from the police officers in the case indicates that Tom Johnson was an alias for Robert Thompson. No one by the name of Tom Johnson or Robert Thompson testified for the State at trial. The State produced three policemen as witnesses, only two of whom were eye-witnesses to the alleged controlled sale. The alleged sale took place around 10:50 P.M. on a corner, 120 feet from where the two policemen were standing. We shall set out the testimony of the officers in parallel manner to highlight certain factual inconsistencies.

Officers Walter Pankiewicz, Robert Frawley and Sergeant Rolf Northfell testified that they drove an informer in an unmarked car to the vicinity of Madison and Leavitt Streets in the City of Chicago. They parked the car facing west on Madison Street, four or five doors east of the corner of Madison and Leavitt. The informer possessed $20.00 in pre-recorded currency, two five dollar bills and ten one dollar bills. Each recorded bill had an ink dot in the letter "D". The informer went to the northeast corner of Madison and Leavitt and stood there for several minutes. Officers Pankiewicz and Frawley got out of the car and stood four or five doors east of the corner on the north side of Madison Street. Sergeant Northfell remained in the car. It was dark but there were people on the street that August evening. Sergeant Northfell testified that Officers Pankiewicz and Frawley remained near the curb very

close to the car. He could not remember that they were ever near the store front. Officer Frawley, however, testified that he and Officer Pankiewicz would step inside the vestibule of one of the buildings and then step out. Frawley and Pankiewicz testified that from their position at the vestibule they were never closer than 120 feet to the corner.

After a few minutes, the officers observed an unknown party come up to the informer on the corner. Officer Pankiewicz testified that the informer and the other party were together for three to five minutes. Officer Frawley testified the meeting was brief since "They only talked for a few seconds." Pankiewicz then testified that "After several minutes a man approached our informer. I observed our informant hand something to the man he was talking to." Frawley testified he wasn't able to see what the informer handed to the other party. Frawley also stated that he didn't know if all $20.00 was in the informer's hand but didn't think the defendant gave the informer $5.00 in change.

The officers admitted they had only a profile view of the parties on the corner. Sergeant Northfell had no view at all, since other vehicles obstructed his vision. Officer Frawley testified he could see both parties very well. But he also testified that the informer was standing on the corner in a northeasterly direction so that the defendant would be facing southwest with his back to the officers. Frawley stated "I saw his side" but couldn't recall what the defendant was wearing nor any of his physical characteristics. Officer Pankiewicz testified he saw only the defendant's left side for possibly a minute or two. This was the extent of the police officers' description of the defendant at the time of the alleged sale.

The officers then observed the defendant leave the informer's presence and walk north on Leavitt Street. The defendant returned a short time later. Frawley testified that he saw the defendant hand "something" to the informer. Pankiewicz testified that "it appeared to be that he (the defendant) would be giving him (the informer) something * * * unless it's a new type of handshake" but admitted "I didn't see him give anything." According to both officers, the defendant then continued walking south on Leavitt, out of their sight. The informer walked east on Madison, toward the police officers. According to Officer Pankiewicz, the informer got into the unmarked car and handed Officer Frawley a foil pack of white powder. Later Pankiewicz could not remember whether the informer got into the car or not. According to Officer Frawley, the informer reached through the right front window of the car and handed him the tinfoil and $5.00. At another point in the record Frawley testified that he didn't bother to count the money. Pankiewicz testified the informer gave them a description of the seller. Frawley testified the

informer did not give them a description of the seller, other than to say he was a male Negro.

Frawley then testified that the informer left them in a few minutes. The officers pulled away in their car and drove south one block on Leavitt. They observed three men standing on the northwest corner of Monroe and Leavitt. Neither officer specifically testified he recognized Melvin Kelley in the group of three as the same person who perpetrated the sale on the corner of Madison and Leavitt. Officers Frawley and Pankiewicz testified they approached the men and that Pankiewicz searched Melvin Kelley. Pankiewicz found $19.00 or $20.00 on the defendant's person, $15.00 of which was recorded currency. Sergeant Northfell testified he could not remember which of the three men was searched first. Northfell testified that "He (Pankiewicz) recovered money from one of the individuals and stated, 'I got all of it.' " No narcotics were found on defendant Kelley. The officer then searched the other men and released them. The officers transported defendant Kelley to Madison and Halsted Streets where they called for a squadrol which took Kelley to the Narcotics Unit for processing.

While at Madison and Halsted Streets, eleven blocks from the corner of the alleged sale, the officers met the informer. They had no idea how the informer got to that corner. They did not know if the informer took a bus, a cab, or if he walked. Frawley testified he often gave the informer some change, but didn't think the informer had any money on him. Pankiewicz testified the informer probably took a bus, even though he had no money. Frawley denied that the informer turned the narcotics and marked money over to him during this second meeting. Frawley placed the time of the meeting at a few minutes after the defendant's arrest. No further explanation of this encounter was given.

Defendant Melvin Kelley testified that he took part in a crap game from approximately 10:15 to 10:50 P.M. on the date in question with ten to fourteen others. Two witnesses supported the defendant's alibi defense. They testified that the defendant was winning big at the crap game; that when the police broke up the game the defendant and another picked the bets off the ground; that the players re-gathered minutes later near Monroe and Leavitt; and that as they commenced to re-distribute the bets three officers approached and arrested the entire group. Defendant testified he was carrying a large amount of money at the time of the arrest and contends that his County Jail receipt of admittance showing the numbers 112.40 on it corroborate his testimony. The State produced two record keepers from the Central Detention Lockup, not the County Jail, who testified that the defendant did not have $112.40 on his person at the moment of his admission to the lockup.

Defendant also testified that Officer Pankiewicz attempted to pressure him at the Central Police Station into becoming the officer's personal informer and threatened to charge him with a sale of narcotics if he didn't comply.

■■ In a criminal case the burden rests upon the State to prove beyond a reasonable doubt not only the commission of the crime charged, but also to establish by the same degree of proof the perpetration of the crime by the person accused. (*People v. Kidd* (1951), 410 Ill. 271, 102 N.E.2d 141.) It becomes the duty of a reviewing court to scrutinize the evidence, and if it is not sufficient to remove all reasonable doubt of the guilt of the defendant and to create an abiding conviction that he is guilty, the conviction will be reversed. (*People v. Botulinski* (1943), 383 Ill. 608, 50 N.E.2d 716.) A conviction cannot be deemed to be sustained by evidence beyond a reasonable doubt if the identification of the accused is vague, doubtful, and uncertain. *People v. Cullotta* (1965), 32 Ill.2d 502, 504, 207 N.E.2d 444.

■■ Applying these principles of law to the case before us, we find that the State failed to prove beyond a reasonable doubt that the defendant perpetrated the crime of sale of narcotics. Many factors raise a reasonable doubt as to the defendant's guilt. The State's witnesses testified they observed a controlled sale on the corner of Madison and Leavitt Streets around 11:00 P.M. The circumstances were not conducive to a positive identification of the seller. The officers stood over 120 feet from the corner. They admitted they had only a profile view of the seller for a few moments. The informer did not testify. The officers subsequently found marked money on the defendant's person, but the circumstances of the arrest tend to show the officers did not know which of the three men standing on the corner of Monroe and Leavitt was the seller. Such other factors as the subsequent unexplained meeting with the informer and, in general, the testimony of the officers fraught with inconsistencies confuse the State's case and cast doubt upon the credibility of the officers. The defendant offered an explanation of his possession of the recorded funds and supported his defense with witnesses and a receipt from the County Jail. We cannot allow the conviction based on the record before us to stand. Accordingly, for the reasons set forth, the judgment of the Circuit Court of Cook County is hereby reversed.

Judgment reversed.

BURMAN and DIERINGER, JJ., concur.