THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EARL BIBBS, Defendant-Appellant.

First District (3rd Division)    No. 77-1650

Opinion filed July 18, 1979.

Ackerman, Durkin and Egan, Ltd., of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James Veldman, and Paul D. Kerpan, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

After a trial without a jury, defendant Earl Bibbs was found guilty of rape, two counts of armed robbery and two counts of burglary. He was sentenced to terms of 10 to 25 years on each of the robbery and rape counts, and to 5 to 20 years on the burglary counts, all sentences to run concurrently. Defendant contends on appeal that he was deprived of the effective assistance of counsel; that the trial court erred in restricting cross-examination of a prosecution witness; that he was not proved guilty

beyond a reasonable doubt; and that the sentences imposed were excessive.

At approximately 10:35 p.m. on September 1, 1976, two sisters, Colleen and Denise, found an armed assailant in their Chicago apartment. After holding a knife to Denise's throat, the assailant bound the girls with nylon stockings. He subsequently cut their bonds and forced them into different rooms in the apartment in order to get money from their purses. He again bound and blindfolded the girls, and forced the girls to lie on the bathroom floor. He then took Colleen to the dining room and compelled her to disrobe; her blindfold fell from her eyes at this time. The assailant raped her. When the assailant and Colleen returned to the bathroom, they found that Denise had freed herself and was holding an aerosol can and curling iron. Colleen dissuaded Denise from resisting; the assailant shoved the girls into a bedroom and fled.

Both girls identified defendant as their assailant. They gave the following description to the police: he was black, kind of tall, had an afro hair style, high cheek bones and forehead, almond-shaped eyes, square chin, and had facial hair and sideburns. He wore blue jeans and a blue work shirt. They did not notice a mustache. The girls identified a knife and sunglasses recovered in an apartment shared by defendant and his fiancée as those of their assailant. They described the knife as being six inches long with an unusual curved blade and a brown handle; the knife actually had a black handle.

The entire incident took approximately 30 minutes. Defendant kept turning lights off in the apartment and he continually admonished the girls not to stare at him. The girls testified that the lighting was good and that they stared at their assailant. They spoke individually to a police artist who made a sketch of the assailant from their description. The final sketch did not look like defendant. The police artist testified by stipulation that Denise could not recall the assailant's physical characteristics.

On September 16, 1976, Officer Walter Klein of the Chicago Police Department, the investigating officer, showed the sisters separately photographs of five black males, including that of defendant. The sisters both identified defendant as their assailant. Defendant's photograph had been taken two weeks prior to the present occurrence when he had been arrested for a similar crime but had been released. The photograph showed that defendant had a mustache. After the victims identified defendant's photograph, Klein arrested defendant in his apartment. The officer found the knife and sunglasses lying on top of defendant's bedroom dresser. The sisters separately identified defendant at a station lineup.

Defendant testified that he did not commit the crimes in question. He

offered an alibi supported by his fiancée and two other friends. The alibi evidence was that on the day in question he was out of his fiancée's apartment for only one hour. During that hour, he helped assemble furniture at the apartment of his friend, Harvey Clark.

On rebuttal, two other rape victims testified for the State that defendant's knife and sunglasses belonged to their assailant, and they both identified defendant as their assailant. One of the victims stated that fingerprints of her assailant found in her apartment did not match those of defendant. The manager of the furniture store where Clark picked up his furniture, testified that according to his records the furniture was picked up on August 25, 1976, rather than on September 1, 1976. He also stated that his records would not indicate a subsequent pick-up of furniture if the furniture was not available until September 1.

Defendant initially contends that he was deprived of the effective assistance of counsel at trial. He maintains that his privately retained counsel demonstrated his incompetency in the following ways: counsel in his closing argument stated to the court that there was enough evidence to show that defendant could have committed the crimes; counsel's failure to successfully pursue a motion to suppress the identification; counsel's failure to present a motion to suppress evidence; counsel's failure to subpoena the police department artist who drew the composite sketch; counsel's examination of a witness regarding a pattern of similar crimes in the area; and counsel's allusion to other indictments pending against defendant.

■▌ A court of review will not reverse a conviction for ineffective assistance of privately retained counsel unless the representation of a client is of such low caliber as to amount to no representation at all or it reduces the court proceedings to a farce or sham. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677; *People v. Torres* (1973), 54 Ill. 2d 384, 297 N.E.2d 142.) In order to warrant a reversal because of the incompetency of trial counsel, a defendant must establish actual incompetence as reflected by the representation and substantial prejudice resulting therefrom. (*People v. Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3; *People v. Newell* (1971), 48 Ill. 2d 382, 268 N.E.2d 17.) Because proper trial strategy or tactics to be employed in any instance are matters dependent upon the better judgment of the individual attorney, mere errors in judgment or mistakes in strategy will not render a trial counsel's representation of a defendant incompetent. (*People v. Murphy; People v. Shestiuk* (1978), 59 Ill. App. 3d 296, 376 N.E.2d 56.) We conclude from an examination of the record that defense counsel rendered effective representation to defendant in the present case.

■▌ We now consider the several illustrations advanced by defendant in support of his claim of inadequate representation by his counsel.

He initially argues that counsel in his closing summation to the judge stated there was sufficient evidence to prove defendant guilty. It is obvious that the court reporter omitted the word "not" and distorted counsel's thought. Throughout the trial, both in his examination of witnesses and in argument, counsel had insisted that the evidence was insufficient to prove defendant guilty beyond a reasonable doubt and that defendant was innocent. If, however, counsel inadvertently made the comment, it was a remark made, not to a jury, but to an experienced trial judge. Under the circumstances of the total defense presented, the comment would not render counsel's representation ineffective.

■■ We find no merit in defendant's contention that trial counsel demonstrated his incompetence by not properly pursuing a pretrial motion to suppress the identification. Defendant complains that he was the only witness to testify about the lineup identification, and that counsel erred in not calling the sisters as witnesses at the hearing. The fact is that defendant's own testimony, along with photographs of the lineups which were introduced into evidence, revealed clearly that the lineups were conducted fairly and without improper suggestion. Trial counsel's failure to call additional witnesses did not demonstrate ineffective assistance of counsel.

■■ Under his ineffective assistance of counsel argument, defendant next contends that counsel's failure to present a motion to suppress physical evidence, the sunglasses and knife, was proof of his incompetence. The police officer testified that he arrested defendant at the latter's apartment after the two girls had identified him as the rapist and robber. The officer further testified at trial that he recovered the sunglasses and knife which he saw lying on top of defendant's bedroom dresser. The officer had the right to make the arrest, and he had the right to make a search of the person arrested and the area under his immediate control. (*People v. Pruitt* (1967), 79 Ill. App. 2d 209, 223 N.E.2d 537.) The seizure of the physical evidence was valid, and failure to present a motion to suppress the evidence did not display any incompetence on the part of counsel.

Defendant next asserts that trial counsel erred in failing to subpoena the police department artist who drew the composite sketch of the assailant. The testimony of the witness was offered into evidence by stipulation, and we fail to see what prejudice accrued to defendant.

■■ Defendant also maintains that trial counsel demonstrated incompetence by cross-examining the police officer regarding a pattern of similar crimes occurring in the area. This tactic represented an exercise of counsel's judgment, did not elicit any testimony damaging to defendant, and did not render counsel's representation of defendant ineffective.

■■ Defendant's final argument under the ineffective assistance of counsel heading is that counsel alluded to an indictment pending against

defendant. The purpose of counsel's reference to the matter was to prevent the State from presenting testimony in its case-in-chief concerning another rape. The tactic was successful and demonstrated counsel's effectiveness.

Our examination of the record convinces us that trial counsel adequately and capably represented defendant at trial. Counsel presented an adequate although unsuccessful defense. It was not of such a caliber as to amount to no representation at all, nor did the representation reduce the proceedings to a farce or sham.

Defendant next contends that the trial court committed reversible error in restricting his cross-examination of one of the sisters regarding her identification of the defendant. After defense counsel was permitted to learn from the witness that she had contacts with black students in school and that she would know one black person from another, the trial court sustained objections to questions as to whether the witness had black neighbors, social friends, or co-workers.

■ Wide latitude should be afforded to a party in the cross-examination of a witness; substantial discretion, however, is vested in the trial court to determine the manner and scope of that examination (*People v. Coles* (1979), 74 Ill. 2d 393, 385 N.E.2d 694). And only in a case of clear abuse of that discretion, resulting in manifest prejudice to defendant, will a reviewing court interfere. (*People v. Peter* (1973), 55 Ill. 2d 443, 303 N.E.2d 398; *People v. Gallo* (1973), 54 Ill. 2d 343, 297 N.E.2d 569.) While a witness' reliability of identification should be tested thoroughly and that test should include the contact of the witness with another racial group, we do not believe that the restriction of defendant's cross-examination substantially prejudiced defendant in any material respect. Certainly, the restriction did not constitute reversible error.

■ Defendant's contention that he was not proved guilty of the crimes beyond a reasonable doubt has no merit. Two credible eye-witnesses, with ample time and opportunity to observe their assailant, positively identified defendant. They did so, having observed him during the occurrence for thirty minutes under good lighting conditions. The various discrepancies and omissions of detail relied upon by defendant in support of his argument do not destroy the validity of the identification, but instead go to the weight of the testimony to be evaluated by the trier of fact. (*People v. Barber* (1979), 70 Ill. App. 3d 540, 388 N.E.2d 833; *People v. Sanders* (1976), 38 Ill. App. 3d 473, 348 N.E.2d 229.) In light of the conflicting testimony, it was for the trial court, with its superior opportunity to observe the demeanor and credibility of the witnesses, to determine the truth. We will not disturb the court's determination.

Defendant finally contends that the sentences imposed were excessive. The imposition of sentence is a matter of sound judicial

discretion and, absent an abuse of that discretion, the sentence imposed by the trial court will not be altered upon review. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Givens* (1977), 46 Ill. App. 3d 1035, 361 N.E.2d 671.

■■ In the present case, the trial court reflected upon defendant's age, the presentence investigation report and his prior conviction for an unrelated offense. When all factors, including the severity of the offenses are considered, the sentences of 10 to 25 years for the rape and robbery counts were not excessive.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

SIMON, P. J., and McGILLICUDDY, J., concur.